# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 24, 2009 Session

## LARRY LYNN AVERITT, SR. v. LYNN BINKLEY AVERITT

**Direct Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-06-172      Laurence M. McMillan, Chancellor**

_____

**No. M2008-02047-COA-R3-CV - Filed July 24, 2009**

_____

In this divorce dispute, Wife argues that the trial court erred in not awarding her the divorce, by characterizing her condominium as marital property, and in the division of marital assets, including funds that the court found Husband had dissipated from the marital estate. Finding that the Husband did not dissipate marital funds, we reverse. On all other issues, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

W. Timothy Harvey, Clarksville, Tennessee, for the Appellant, Lynn Binkley Averitt.

Michael K. Williamson, Clarksville, Tennessee, for the Appellee, Larry Lynn Averitt, Sr.,

**OPINION**

**Background/Procedural History**

After over thirty years of marriage, Larry Lynn Averitt, Sr. ("Husband") filed for divorce from his wife, Lynn Binkley Averitt ("Wife") on March 28, 2006, citing irreconcilable differences. The parties were married in 1968 and had two children, who are both beyond the age of majority. Husband filed a Motion to Compel Mediation, and the parties agreed to mediate the dispute. During the mediation, the parties signed a handwritten agreement regarding various issues. Among other things, the parties agreed to "[e]qualize all retirement accounts . . . upon verification of amounts. Excluding the FERS account of Wife, the determination of which will be reserved."

On July 30, 2008, Wife filed an answer and counter-complaint, arguing that she was entitled to a divorce on the grounds of inappropriate marital conduct, abandonment, and refusal to provide for the spouse. Wife averred that in 1993 Husband discovered that Wife had engaged in multiple

adulterous relationships. At the time, he filed for divorce but subsequently dismissed his complaint after the parties sought counseling and reconciled. Eventually, the parties resumed marital relations and cohabited until December 2006. Wife claims that during their reconciliation, Husband was distrustful and often forced her to explain the circumstances of her infidelity in vivid detail. Wife claims that Husband was difficult throughout the reconciliation process. She claimed that Husband kept a videotape of her indiscretions that he would occasionally review. Husband required Wife to disclose and describe every transgression, and when the parties began to reconcile, Wife quit her job as a graphic design artist because it required extensive traveling. She explained that Husband did not want her to continue traveling because it bred mistrust. Several years later, Wife's mother moved in with the parties after she had surgery, and Husband disclosed Wife's conduct to her mother.

Both Husband and Wife have worked throughout their marriage. In 1993, Wife was employed as a graphic design artist. After quitting her job as a graphic designer, Wife earned her Masters degree and began teaching art. She earned approximately $55,000.00 to $60,000.00 a year while teaching and managed to acquire approximately $62,300.00 in two retirement accounts. Meanwhile, Husband worked in a family-owned business called Averitt Lumber Company ("Company"). Husband also owned shares in that business. At the time that Husband filed for divorce, Husband's business was in trouble. At some point, he loaned $410,000.00 to a potential purchaser of the Company. Nevertheless, the Company failed and Husband and Wife were personally sued in federal court for the Company's fourteen million dollar debt. The parties settled the federal court suit and, thereafter, approximately $2.1 million dollars remained in their marital estate.

The trial court entered a Final Decree of Divorce on September 5, 2008. It declared the parties to be divorced pursuant to Tennessee Code Annotated § 36-4-119. The trial court then made the following findings relevant to this appeal:

> (7) The [court] specifically finds that the parties' former marital residence located at 2989 West-Mor Drive has a value of Two Hundred Five Thousand Dollars and No/100 ($205,000.00) and is unencumbered. By stipulation of the parties, the [c]ourt finds that the WIFE's condominium to which she relocated in December of 2006 following the filing of these divorce proceedings, contains equity in an amount of Forty-Seven Thousand Four Hundred Four Dollars and No 100 ($47,404.00). The HUSBAND is ordered to pay to the WIFE Seventy-Eight Thousand Seven Hundred Ninety-Eight Dollars and No/100 ($78,798.00) within ten (10) days of a Final Decree of Divorce in this cause becoming final in order to balance the parties' respective interests in this real property. In the event HUSBAND is unable or unwilling to pay such amount within such time, the Clerk and Master will be appointed as Special Commissioner and the house will be sold, with the WIFE to receive her Seventy-Eight Thousand Seven Hundred Ninety-Eight Dollars and No/100 ($78,798.00) provided herein.

(8)  The [c]ourt declines to award to the WIFE any compensation for the HUSBAND's occupancy of the former marital residence during the pendency of these proceedings.

(9)  The [c]ourt does find that the HUSBAND's participation in the "Larry Parrish transaction" consisting of a Four Hundred Ten Thousand Dollars and No/100 ($410,000.00) loan during the pendency of these divorce proceedings, did, in fact, represent a dissipation of the marital estate.  The [c]ourt specifically finds that it is undisputed that such loan was made without the knowledge or consent of the WIFE.

(10)  The [c]ourt finds, notwithstanding the terms of the parties' mediated agreement, that the WIFE had three (3) retirement accounts consisting of an AXA account, a FERS account, and a Thrift Savings Plan.

(11)  The [c]ourt finds that the balance in the AXA account consists largely of funds from the WIFE's mother's estate, her share of former marital assets that were liquidated and divided by agreement of the parties during the pendency of these proceedings, and to a lesser extent, her paychecks earned during the pendency of these proceedings.  The [c]ourt finds that the AXA account should be awarded to the WIFE as her separate property.

(12)   The [c]ourt also finds that the parties' two (2) other accounts representing a FERS account, having a balance of approximately Four Thousand Three Hundred Dollars and No/100 ($4,300.00), and a Thrift Savings Plan, having a balance of approximately Fifty-Eight Thousand Dollars and No/100 ($58,000.00), are marital property, having accrued during the pendency of this marriage, and are subject to an equitable division by this [c]ourt.  The [c]ourt finds that the HUSBAND's belief that the Thrift Savings Plan, having a balance of approximately Fifty-Eight Thousand Dollars and No/100 ($58,000.00), was actually the FERS account referred to in the mediation agreement, is reasonable and, therefore, the Court finds the same to be subject to division by this Court.  As part of an equitable division of the marital property, and as compensation to the WIFE for the HUSBAND's dissipation of marital assets in the form of the "Larry Parrish transaction," the [c]ourt awards to the WIFE all right, title and interest in both the FERS account and the Thrift Savings Plan.

(13)  Based upon all statutory factors, which the [c]ourt is required to consider, the [c]ourt will not award alimony in this case.  Similarly, the [c]ourt will not make an award of attorney's fees.  Each of the parties shall bear their own attorney's fees in this cause.

## *Issues*

As stated in her brief, Wife raises the following issues on appeal:

1.  Did the court err when it did not grant the Wife the divorce and award attorney[] fees?

2.  Did the court err when it did not award the appellant reimbursement of the dissipation of the marital estate for the husband's

    I.   Payment of Husband's attorney[] fees from the marital estate
    II.  Husband's living in the marital home, and
    III. Loss of marital estate in the loan of money to a third party in a covert scheme for his business purposes

3.  Did the court err when it included assets for division that had earlier been allocated by an agreed mediation?

4.  Did the court err when it found the equity in the Wife's condominium was marital property?

We have reorganized Wife's issues to address them in the order we believe is most appropriate. We first address Wife's argument that she was entitled to attorney fees because the trial court should have granted her the divorce. Second, we will address Wife's third argument that the marital dissolution agreement precluded the trial court from considering Wife's thrift savings account. Third, we address whether Wife's condominium was separate property that should have been excluded from equitable division between the parties, and finally, we address whether Husband dissipated marital funds.

## *Standard of Review*

Because this case was tried before the trial court, we review the decision *de novo* upon the record and presume the correctness of the trial court's factual findings. Tenn. R. App. P. 13(d); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). For it to preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App. 2006). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). If the trial court fails to make findings of fact, however, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). Similarly, we review the trial court's application of law and mixed questions of law and fact *de novo*

with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

In this divorce case, Wife challenges the trial court's equitable division of the marital assets. The trial court has wide latitude in dividing the marital assets and awarding alimony. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007); *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). An award of attorney fees lies in the discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Owens*, 241 S.W.3d at 495. A trial court abuses its discretion when the evidence does not support the court's decision, when the court applies an incorrect legal standard, or when it reaches a decision that contravenes logic or employs reasoning that causes an injustice to the complaining party. *Id.* at 496. Likewise, trial courts are afforded great discretion when dividing marital property. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Because of this wide discretion, we will generally defer to the trial court's division of the marital property unless it is inconsistent with the statutory factors or is not supported by a preponderance of the evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

### *Attorney Fees*

Wife first argues is that the trial court erred when it did not grant Wife the divorce and award her attorney fees. Wife's argument is two-fold; first, she argues that there were no grounds upon which to grant Husband the divorce because the couple reconciled. Then, Wife argues that the trial court should have granted Wife the divorce because of Husband's inappropriate marital conduct, including his conduct "to humiliate and redress her during the period of reconciliation 1993 to 2006, and his conduct in regard to the illusory promise of $150,000.00 in the proposed Marital Dissolution Agreement, and the covert wasting of assets in the form of a loan to Larry Parrish." Wife then contends that the trial court should have awarded Wife attorney fees in the amount of $20,000.00 because the trial court should have granted her the divorce.

First, we note that it is within the trial court's discretion to award attorney fees. In divorce proceedings, an award of attorney fees is considered to be alimony in solido. *Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007). Unlike discretionary costs, which require a claimant to be the "prevailing party" before such costs can be awarded, attorney fees may be awarded to an economically disadvantaged spouse in accord with Tennessee Code Annotated § 36-5-121(i).[1] *Id.* at 495–97. The decision to award attorney fees lies soundly within the discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Id.* at 495. It is not our role to second-guess a trial court's alimony award unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Id.* at 493. When determining whether to award attorney fees, the trial court must consider the following applicable factors:

---

[1] Discretionary costs include reasonable and necessary court reporter expenses, reasonable and necessary expert witness fees and guardian ad litem fees. *Owens* at 496–97.

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income, from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(2005). The most important of these factors is the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay. *Owens*, 241 S.W.3d at 496.

In addition, Tennessee law provides that a trial court may declare the parties to be divorced without specifically granting the divorce to either party. Tenn. Code Ann. § 36-4-129. Tennessee Code Annotated § 36-4-129 provides that

[t]he court, may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Tenn. Code Ann. § 36-4-129 (2005).

We find no merit, therefore to either of Wife's arguments. Because the Tennessee statute expressly provides that the trial court may declare the parties to be divorced so long as either party has submitted sufficient proof that it has grounds for a divorce, we find no error in the trial court's decision to declare the parties to be divorced instead of awarding a divorce to Wife alone. In addition, Wife's argument that the trial court should have awarded her attorney fees focuses solely on the fault of the parties and fails to address any of the other relevant statutory factors. Considering the proof submitted at trial, however, we find that the trial court properly denied Wife's request for attorney fees. There are no minor children in the home and Wife is well-educated and has a sufficient income, while Husband is currently unemployed. Wife failed to submit any proof as to her need, as an economically disadvantaged spouse, for Husband to pay her attorney fees or to submit proof that Husband had a greater ability to pay these fees. The evidence indicates that both parties are in good physical health, though both are nearing traditional retirement age. Neither party has significant separate property, and the division of marital property has been equal. After a thorough review of the record, we find that the trial court did not err when it held that the parties would be responsible for their own attorney fees.

### *Mediation Agreement*

This Court is a bit perplexed by Wife's argument that the trial court erred by dividing Wife's thrift savings account, which she claims was included in the parties' Marital Dissolution Agreement ("MDA"). The MDA provided that the parties were to split their retirement accounts equally. The parties expressly excluded Wife's FERS account from this agreement and did not further state which of Wife's accounts were to be equally divided. Wife's argument to this Court appears to be that the trial court erroneously set aside a portion of the mediation agreement by awarding the entire fifty-eight thousand dollar thrift savings account to Wife, which it then set off against Husband's dissipation of marital assets. Wife now seeks this Court to order that the fifty-eight thousand dollar thrift savings account be Wife's sole and separate property. As we explain below, we find no merit to Wife's argument.

On June 2, 2008, while the divorce action was pending, the parties entered into mediation. Their agreement essentially divided their assets equally, including proceeds from the sale of several parcels of real property and their collective accounts. There was some dispute, however, as to the settlement of Wife's retirement accounts. Wife explained at trial that she had three accounts. Wife testified that she had a FERS retirement account through Ft. Campbell, the school at which she teaches. She testified that the FERS account contained approximately $4,300.00. Wife testified that she also had a thrift savings account that contained approximately $58,000.00. That account consisted of money taken out of her paycheck and a 5% government match on those funds. Wife admitted that she earned the funds in both of these accounts while she was married to Husband. Wife also testified that she has an AXA account, which is a non-retirement account that earns interest. She testified that she deposited the funds that she inherited from her mother and her portion of the liquidated marital assets into her AXA account. She testified that she also deposited her paycheck into the AXA account, and at the time of trial, the account contained approximately $35,000.00. Husband testified at trial that he also had various accounts. Among the various

-7-

accounts were several Morgan Keegan accounts and an AXA account that, together, totaled approximately $827,270.00 at the time of trial.

Pursuant to the mediation, the parties signed a handwritten document that provided the following relevant provisions:

4. Equalize all retirement accounts of the parties upon verification of amounts. Excluding the FERS account of Wife, the determination of which will be reserved.

. . . .

8. Issues relating to "Larry Parrish" transaction, alimony and Wife's FERS accounts are reserved.

. . . .

15. Submit to Court division of Wife's AXA account.

On July 23, 2008, the parties also filed the mediator's report with the court, which set out the various issues that the parties had mediated and contained a list of those issues remaining at trial. Among various things, the mediator listed the "[d]ivision and or/disposition of the FERS retirement benefit accrued by the wife by virtue of her employment" among those issues to be submitted to the trial court for a determination. In addition, the mediator stated that the parties had agreed to "equalize" their retirement accounts, including the Wife's "Ft. Campbell Thrift Savings Plan," but that they excluded from that calculation Wife's FERS retirement benefits.

The parties dispute what was communicated during the mediation process. Wife claims that the parties never discussed the thrift savings account at the mediation, and that Husband made a unilateral mistake in failing to address the thrift savings account. At trial, Wife testified that she had the following understanding of the mediated agreement:

Q. All right. Now, you understood from the mediation that the only two accounts which remained not accounted for in the mediation was the AXA account - -

A. Mine. Uh-huh (affirmative response). My AXA.

Q. - - and the FERS account?

A. Yes.

Q. And AXA has approximately how much in it?

A.    Between 35 and 33,000.

Husband testified that they had agreed in mediation to split Husband's various accounts equally between them, but that he thought that Wife's FERS account and thrift savings account were the same account. At trial, Husband presented the statement from the account entitled "Thrift Savings Plan Participant Statement" which contained $58,368.72. Among the various account information, including the account number, Wife's date of birth, and employment status, the account summary stated "Retirement Coverage: FERS."

At trial, Husband sought to introduce an issue regarding the disposition of Wife's thrift savings account. After finding that Husband's belief that the thrift savings plan containing $58,000.00 was the FERS account the parties excluded from the MDA, the court found that the thrift savings account was subject to division by the court. The court awarded the thrift savings account to Wife but then set this amount off against funds that it found that the Husband dissipated during the marriage.

"A marital dissolution agreement may be enforceable as a contract even if one of the parties withdraws consent prior to entry of judgment by the trial court, so long as the agreement is otherwise a validly enforceable contract." *Barnes v. Barnes*, 193 S.W.3d 495, 499 (Tenn. 2006). "Where parties have reached a mediated agreement, we have consistently applied the principles of contract law to determine whether, based upon that agreement, a judgment may be entered in a case." *McMahan v. McMahan*, No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *4 (Tenn. Ct. App. Dec. 5, 2005). Fundamental contract principles apply. *Id.* at *5. For an agreement to be a valid and enforceable contract there must be a meeting of the minds between contracting parties as to the essential terms of the agreement. *Id.* *5 (citing *Higgins v. Oil Chem. And Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991)). If there is a valid and unenforceable contract, the party seeking to invalidate the contract must bear the burden of proving adequate grounds for its invalidation. *Id.* at *5 (citing *Williamson v. Upchurch*, 768 S.W.2d 265, 269 (Tenn. Ct. App. 1988)). Contract interpretation is a matter of law which appellate courts review *de novo* with no presumption of correctness on the trial court's legal conclusions. *Barnes v. Barnes*, 193 S.W.3d 495. The cardinal rule of contract interpretation is to ascertain the intent of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995).

Wife does not dispute the fact that the thrift savings account was, in fact, a retirement account. Pursuant to the plain language of the parties' MDA, the thrift savings account was, therefore, required to be equally distributed between the parties. Although Wife did not disclose the thrift savings account to be separate from her FERS account, the trial court divided the thrift savings account as provided in the MDA. The trial court proceeded to award Wife the entire account due to Husband's alleged dissipation of marital assets. Thus, Wife received not only what the MDA called for, to wit, equal distribution of the retirement accounts, but additional monies due to the Husband's dissipation. Therefore, we find no merit to Wife's argument that the trial court erred in how it distributed Wife's thrift savings account.

-9-

***Division of Property***

Wife also disputes the trial court's division of property. She argues that the trial court erred in how it classified the property and in its division of the marital assets. Trial courts are, however, vested with a great deal of discretion when classifying and dividing the marital estate. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). This Court's role is to determine whether the trial court applied the correct legal standards, weighed the statutory factors logically and within reason, and divided the marital property equitably. *Id.* When dividing a marital estate the trial court must begin by classifying the parties' property as either separate or marital property. *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Questions regarding the classification of property as marital or separate are factual; thus, we will not disturb the trial court's decision unless the evidence preponderates to the contrary. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). The general rule is that assets acquired by either spouse during the marriage are presumed to be marital property.[2] *Owens*, 241 S.W.3d at 478. Thus, the party asserting that an asset acquired during the marriage is separate property bears the burden of proving, by a preponderance of the evidence, that such asset is separate property. *Id.* at 485–86.

Tennessee Code Annotated Section 36-4-121(b)(2) provides a list of assets that are considered separate property although they may have been acquired during the marriage. *Id.* at 486; Tenn. Code. Ann. **§** 36-4-121(b)(2). Such property that is, by statutory definition, "separate" includes, in relevant portion, the following property:

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

Tenn. Code Ann. § 36-4-121(b)(2)(2005).

---

[2]Tennessee Code Annotated Section 36-4-121 provides that

"Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

Tenn. Code Ann. § 36-4-121(b)(1)(A)(2005).

Separate assets can, however, become marital property if they are commingled with marital assets. *Keyt v. Keyt*, 244 S.W.3d 321, 328 n.7 (Tenn. 2007). The Tennessee Supreme Court has previously explained the following:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)(citations omitted).

### i. Classifying Separate and Marital Property

Wife argues that the trial court erred by classifying the condominium in which Wife resided as marital property and distributing the equity in Wife's condominium between Wife and Husband. Wife argues that because she purchased the condominium from assets that she inherited from her mother, the condominium was separate property and should not have been distributed as part of the marital estate. At trial, however, Wife testified that the money used to make the down payment on the condominium came from various sources. Wife testified as follows:

Q. And where did you get the money for the down payment for the condominium?

A. My mother, when she moved in with us, we sold her house and belongings and her car and all, and we put that in an account, a stock account. And from that we paid - - it was in - - it was in my name. That, and then we split . . . . From that. And I believe we had split a tax return. . . . And my personal check from work was also deposited into that account. And from that - - those monies, I paid a down payment for the loan.

The parties stipulated that there is $47,404.00 equity in the condominium.

Although the inheritance that she received from her mother is properly classified as separate property, it became marital property when she commingled it. Wife testified that she placed the inheritance into the same account where she regularly deposited her paycheck. Wife acknowledged that the funds she received in her paycheck were earned during the marriage, and they are, thus, marital assets. Wife presented no evidence as to the amount of money that she

inherited or that she could trace any specific funds into the condominium that she purchased. Given the evidence submitted at trial, we find that the trial court did not err by concluding that Wife's condominium was marital property; Wife failed to meet her burden of proving that the condominium is her separate property.

## ii. Dissipation of the Marital Estate

Wife also argues that the trial court erred in dividing the marital property because it failed to properly consider Husband's dissipation of marital assets. She claims that Husband dissipated the marital assets in three different ways. First, Husband paid his attorney fees from the marital estate. Second, Husband dissipated the marital assets by living in the marital home without paying any rent, purchasing a vehicle, and paying health insurance. Finally, Wife argues that Husband dissipated marital assets by covertly loaning money to a third party. The trial court found that Husband did not dissipate marital assets by paying his attorney fees or living in the marital home. The court did find, however, that Husband dissipated the marital assets by loaning money in the "Larry Parrish [transaction]." The trial court balanced Husband's dissipation of the marital assets by awarding Wife her entire $58,000.00 thrift savings account. Addressing each separate issue below, we find that Husband did not dissipate marital assets. We, therefore, affirm the trial court's judgment regarding payment of Husband's attorney fees, Husband's use of the marital home during the parties' separation, and Husband's loss of his job, vehicle, and health insurance. We reverse the trial court's determination that Husband dissipated assets when he loaned money to a third party.

After classifying property as separate or marital, the trial court must equitably divide the marital property between the two parties considering the statutory provisions in Tennessee Code Annotated Section 36-4-121. The division of marital assets is not a mechanical process, and the trial court has the power to do what is reasonable under the circumstances. *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). The evidence preponderates against a trial court's factual finding only if supports another finding of fact with greater convincing evidence. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005).

In equitably dividing the marital assets, the trial court should consider whether one party dissipated such marital assets. Tenn. Code Ann. § 36-4-121(c)(5) (2005). The concept of dissipation is based on waste. *Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005). A party dissipates marital property when he or she uses marital property frivolously and without justification for a purpose unrelated to the marriage at a time when the marriage is breaking down. *Id.* The party alleging dissipation of marital assets has the burden of persuasion and the initial burden of production. *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007). To satisfy this burden, the alleging party cannot simply argue that he or she is uncertain of how the money was spent. *Id.* Once the alleging party has made a prima facie case of dissipation, the burden shifts to the party who spent the money to present evidence that the challenged expenditures were appropriate. *Altman*, 181 S.W.3d at 683. As we have previously noted:

It is also important to differentiate between "dissipation and discretionary spending." "Trial courts must distinguish between what marital expenditures are wasteful and self-serving and those which may be ill-advised but not so far removed as from 'normal' expenditures occurring previously within the marital relationship to render them destructive."

*Burden*, 250 S.W.3d at 919–20 (internal citations omitted). In determining whether a particular transaction constitutes dissipations, courts most frequently consider the following: 1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage, 2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or were contemplating divorce, 3) whether the expenditure was excessive or *de minimus*, and 4) whether the dissipating party intended to hide, deplete, or divert a marital asset. *Altman*, 181 S.W.3d at 682–83.

Dissipation is not, however, a separate factor for the court to consider; rather, it must be considered in the context of the marriage as a whole and weighed along with various other relevant statutory factors. *Id.* at 682. The Tennessee legislature has articulated that when equitably dividing marital property, courts should consider all of the following various factors:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, and financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2005). The trial court should distribute the marital property by considering and weighing the most relevant factors in light of the unique facts of the case. *Batson v. Batson,* 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Because of the wide discretion accorded to trial judges in dividing the marital property, we will generally defer to the trial court's decision unless the decision is inconsistent with the statutory factors or is not supported by a preponderance of the evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). For a court to equitably divide the marital assets, it is not required that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

### a. Attorney Fees

Husband testified at trial that he probably spent more than $10,000.00 in attorney fees attempting to delay the sale of the company assets while he attempted to find someone to purchase the Company. Husband's attorney testified that Husband has already paid him approximately $20,000.00 in attorney fees for representation in the federal court suit, the lawsuit Husband filed against a third party, and delaying the sale of the company assets.

Wife testified that there were several marital assets that the parties voluntarily liquidated prior to trial. Wife conceded that Husband may have paid his attorney fees out of these assets. Wife testified as follows:

Q.      Okay . Now, so that we can understand this, I want to make sure I can give it some scale: Between March - - and your attorney referenced this in his Direct Examination of you. Between March of 2006 and the present when this divorce was filed and when it was ultimately heard - -

A.      Uh-huh (affirmative response).

Q.      - - you, by agreement, liquidated some assets; is that correct?

A.      What assets are you talking about?

Q.      I'll be happy to answer that. You, for example, liquidated a second to die life insurance policy; is that right?

A.      Yes, I did. Uh-huh (affirmative response).

Q.      Okay. And that resulted in you and your husband each receiving, oh, approximately like $27,000; is that right?

A.      Yes, uh-huh (affirmative response).

-14-

Q.      Okay.  And you liquidated a federal income tax return that I believe was like 24,000, something like that.  You received, roughly, 11,000 of that - -

A.      Yes.

Q.      - - as did your husband.  Okay.  And then your husband was giving you your half of some natural gas limited partnership distributions, and you received those.  And he said those were around $3,500 year to date.  You received that - -

A.      Yes.

Q.      - - as did he?

A.      Yes, uh-huh (affirmative response).

Q.      So your husband would have had these funds that were his half of what you were getting to live off of, pay lawyers, support himself; is that right?

A.      Yes.

As we have already articulated, it is Wife's burden to prove that Husband dissipated marital assets by paying his attorney.  From Wife's testimony at trial it is apparent that she failed to meet this burden, and we find no error in the trial court's decision that each party pay his and her own attorney fees.

### b. Living in the Marital Home

Wife argues that Husband also dissipated marital assets by living in the marital home and losing his job, vehicle, and health insurance.  Wife left the marital home in December 2006, nine months after Husband filed for divorce.  After Wife left, Husband continued to reside in the marital home and paid the bills associated with the upkeep, taxes, and insurance on the marital home.[3]  Wife argues that Husband dissipated the marital estate by failing to pay her rent while he occupied the home.  In addition, she claims that Husband dissipated assets by purchasing a truck for his personal use.  Wife seeks the following: $1,000.00 per month from December 2006 through September 2008 for Husband's use of the marital home, $150.00 per month for fourteen months that she paid for Husband's health insurance; and $13,000.00 for her half of the funds that she claimed Husband used to buy a new vehicle.

Husband testified that he depleted marital assets in several ways after he filed for divorce.  Husband testified that his employment was terminated from the Company in February 2007.  He

---

[3]The parties agree that the property was unencumbered at the time of trial.

also testified that he has been actively seeking employment. When he lost his job, he lost his salary and various benefits, including health insurance. Husband also previously drove a truck provided by the Company; he was, however, required to return the truck to the Company so that it could be processed for the sale of the Company's assets. He took out approximately $23,000.00 out of the corpus of his accounts during this period to cover basic living expenses. Husband also testified that he purchased a replacement vehicle using approximately $23,000.00 worth of marital assets.

We simply cannot say that the trial court erred when it found that Husband did not dissipate marital assets by living in the marital home, losing his job, losing health insurance benefits, and purchasing a vehicle to replace his loss of a company car. As we previously articulated, the concept of dissipation is based on waste. *See Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005). In addition, dissipation involves intentional or purposeful conduct. *Id.* at 682. We noted in *Altman v. Altman* that "[t]he timing of the expenditure or transaction is extremely relevant. It is unlikely that expenditures that were typical or commonplace during the marriage will constitute dissipation, especially when the other spouse acquiesced in them." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005)(citations omitted). There is nothing in the record to indicate that Husband's job lose was intentional. Husband's purchase of a replacement vehicle in these circumstances appears to be justified. In addition, we do not believe that the purchase of the vehicle is frivolous; the vehicle remained part of the marital estate and was divided by the parties in their MDA. We also agree with the trial court that Husband did not dissipate marital assets by living in the marital home. We fail to see how living in the marital home is a frivolous, unjustified purpose unrelated to the marriage. In addition, such conduct is typical and commonplace during a marriage. Husband lived in the marital home alone, and we find that in these circumstances, his use of the marital home was not a dissipation of marital assets.

### c. Third-Party Loan

Wife argued before the trial court that Husband dissipated marital funds by loaning $410,000.00 to a potential purchaser of the Corporation. The trial court held that Husband dissipated these funds, but balanced the equity of this loss against the money that Wife retained in her two retirement accounts. On appeal, Wife contends that this is inequitable because she was entitled to half of the $375,000.00 Husband was unable to recover from the loan and her $187,500.00 loss could not be equitably balanced against the $62,300.00 that she retained. Husband argues on appeal that the loan to the third party was not a dissipation of marital property.

Husband testified at trial that the Company owed approximately fourteen million to various banks. At some point Husband, Wife, Husband's brother, and his wife personally guaranteed the Company's loans. As they were winding down the business, Husband and his brother disagreed about how to dispose of the company. Husband wanted to sell the company as

a whole. His brother, on the other hand, wanted to cooperate with the bank, close the Company, and sell the assets using the bank's business broker.

Husband and another Company director, however, believed that Larry Parrish ("Mr. Parrish") was willing to purchase the entire Company. At the board of director's meeting, Husband and the other director voted against immediately engaging the bank's business broker because they wanted to give Mr. Parrish ten days to purchase the company so that they would not have to pay unnecessary commissions to the bank's business broker. Husband and the other director out voted Husband's brother. The next day, however, Husband and the other director were terminated as board members,[4] and the Company proceeded to cooperate with the bank and underwent liquidation.

At some point while negotiating with Mr. Parrish , Husband loaned Mr. Parrish approximately $410,000.00 of the parties' marital assets. Husband testified that at the time Mr. Parrish considered purchasing the Company it had ceased purchasing materials, specifically lumber. Mr. Parrish agreed to infuse cash into the Company to purchase lumber to continue the Company's operations. After the lumber had been off-loaded in the Company's lumber yards, Mr. Parrish covertly explained to Husband that his wire transfer did not come through and he did not have the funds to pay for the logs. Husband testified that at that point it was impossible to return the logs and that if the deliverers were not paid it was going to be a bad situation that would impair their ability to sell the Company. Mr. Parrish, therefore, asked Husband to loan him the money. Husband testified that he had to make an immediate decision and he decided to loan Mr. Parrish the money. He conceded that Wife was unaware that he made this transaction and he did not initially document the loan in writing. Later, Husband and Mr. Parrish formally executed a note for the funds.

Eventually, Mr. Parrish defaulted on the loan. Husband testified that he was only able to recover $165,000.00 from the loan he made to Mr. Parrish. Of that money approximately $35,000.00 was returned to the parties' marital estate. The other $130,000.00 was paid to the parties' debtors as part of the federal suit settlement. Husband claimed that his decision to loan Mr. Parrish the money was made to minimize his and Wife's liability by trying to sell the stocks of the Company instead of selling Company assets individually and paying a commission to a brokerage company.

The trial court held that Husband dissipated $410,000.00 in marital assets by loaning the money to Mr. Parrish. We respectfully disagree. The trial court acknowledged that Husband's decision to loan Mr. Parrish the money was probably not the wisest decision and he determined that Husband dissipated the assets because Husband failed to inform Wife about the loan. The court should, however, consider several different factors when determining whether a party dissipated marital assets. Whether a party's conduct constitutes dissipation depends on the particular facts of a case. *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005). We

---

[4]Husband's brother owned 51% of the Company's shares.

believe that the facts in this case are analogous to the situation we discussed in *Altman v. Altman*. In that situation we found that wife did not dissipate marital assets by running an unsuccessful consignment business. *Id.* at 683. The wife used marital funds to pay business taxes and other operating expenses before the business finally closed down. We stated that the "[s]imple mismanagement of family finances is not dissipation nor is using marital funds to prop up a failing business." *Id.* (internal citations omitted). We held in *Altman* that the wife did not dissipate marital funds. *Id.*

Although Wife was not aware in this case that Husband loaned Mr. Parrish the money, the record indicated that Wife rarely participated in the Company's business decisions despite the fact that she was personally liable on the Company's loss. As in *Altman*, Wife failed to present any evidence that Husband loaned Mr. Parrish the money for the purpose of depleting the marital estate. To the contrary, Husband testified that he intended to limit both his and Wife's already-existing liability for any Company losses. Wife did not present any evidence to contradict Husband's testimony. We find, therefore, that the trial court erred by characterizing Husband's business decision as "dissipation."

In light of our determination that Husband did not dissipate marital assets, we find that it was also error for the trial court to award Wife her entire thrift savings account to set off the funds Husband allegedly dissipated. We, therefore, find that wife's thrift savings account should be equally divided between the parties as provided in the parties' MDA.

### Conclusion

In light of the foregoing, we affirm in part and reverse in part. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the Appellant, Lynn Binkley Averitt and her surety, for which execution may issue, if necessary.

_____
DAVID R. FARMER, JUDGE