# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 13, 2006 Session

## DAVID MOSLEY, ET AL. v. PHILLIP L. McCANLESS, THE METROPOLITAN GOVERNMENT

**Appeal from the Circuit Court for Davidson County**
**No. 01C-190     Marietta Shipley, Judge**

---

**No. M2005-00145-COA-R3-CV - Filed on May 16, 2006**

---

The trial court held the Metropolitan Government comparatively liable for injuries sustained by a motorist injured in a vehicular accident. The Metropolitan Government was held comparatively at fault based upon the finding the intersection where the wreck occurred was dangerous, it had notice of the danger, and it failed to remedy the situation. It appeals, contending the design of the intersection and whether to install a stop sign or traffic light is a discretionary function, for which it is immune under the Governmental Tort Liability Act. The evidence supports the findings that the intersection was dangerous and that the Metropolitan Government had notice of the danger, but failed to take remedial action. We therefore affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Erica Kruse and John Kennedy, Nashville, Tennessee, for the appellant, The Metropolitan Government of Nashville and Davidson County.

Lance B. Mayes and Bill Hodde, Madison, Tennessee, for the appellee, David Mosley, et ux.

## OPINION

David Mosley, Plaintiff, and Phillip McCanless, a defendant, were involved in a vehicular accident at the intersection of Polk Avenue and Hutton Drive on September 15, 2000. Plaintiff sustained significant injuries as a result of the accident, including loss of hearing, memory loss, and deficits in his concentration, motor speed, and dexterity.

Plaintiff filed suit against McCanless contending the accident was due to McCanless' negligence in failing to obey a stop sign and to yield. McCanless denied liability and, in the alternative, contended the Metropolitan Government of Nashville, Davidson County, Tennessee was

comparatively at fault due to the fact the intersection was dangerous. As a consequence, Plaintiff amended his Complaint to add the Metropolitan Government as a co-defendant.

The Metropolitan Government defended the case relying generally on the immunity defense under the Governmental Tort Liability Act and, particularly, the discretionary function defense. McCanless settled with Plaintiff, leaving only the Metropolitan Government to defend the action. The case proceeded to trial.

The record reveals Plaintiff was traveling on Polk Avenue and had the right-of-way at the intersection with Hutton Drive. McCanless was driving on Hutton Drive. A stop sign directed motorists on Hutton Drive to stop as they approached Polk Avenue. McCanless allegedly failed to stop at the stop sign, pulled out in front of Plaintiff, and the vehicular accident resulted.

The record tells us the intersection of Polk and Hutton had a long history of accidents and was the subject of numerous complaints by motorists. The accidents were alleged to be the result of several factors. One was the fact there was a curve in Polk Avenue near the intersection that impaired the sight distance of motorists stopped on Hutton Drive. Another factor was the location of the stop sign on Hutton Drive; it was positioned thirty-three feet from Polk Avenue. A third factor was the growth of vegetation at the corner of Hutton Drive and Polk Avenue that restricted and/or reduced the sight distance. As a consequence of these and other factors, motorists familiar with the intersection would ease forward for a better view to determine whether they could turn onto Polk Avenue. Motorists unfamiliar with the intersection were likely unaware of the impaired sight distance, and there was no signage to put them on notice of these factors.

The Metropolitan Government was aware of several accidents at the intersection long before the accident at issue. Additionally, it received numerous complaints from motorists over the years. Some of the complaints pertained to vegetation that obscured the view of oncoming traffic. The record reveals that complaints about the vegetation had been reported to the Metropolitan Government in 1993, 1995, 1996, and 2000, in response to which the Metropolitan Government dispatched crews to cut the vegetation. Of course, the vegetation returned, as did the complaints.

The Metropolitan Government acknowledges it had notice of the wrecks and complaints prior to this accident. Nevertheless, it contends its responses to the notices and the corrective measures taken, and not taken, were discretionary functions of the government for which it has immunity. Thus, it contends it is not liable for the action it took and the action it chose not to take in response to the notices and complaints.

The following are some of the responsive measures taken by the Metropolitan Government. In 1998, the Metropolitan Government sent engineers to study the intersection. This study showed the sight distance from the stop sign on Hutton Drive was limited to 310 feet along Polk Avenue. The engineers reported the restricted sight distance was due to the horizontal curve in the road, not the overgrown vegetation. Based upon the amount of traffic reported in the study, the Metropolitan Government determined the traffic was not sufficient to warrant installing a traffic signal at the

intersection. The Metropolitan Government additionally concluded from the study that the intersection of Polk and Hutton was not sufficiently dangerous to warrant the installation of a traffic control device other than a stop sign.

The matter went to trial with the Metropolitan Government as the only defendant. Following a bench trial, Plaintiff was awarded $293,200 in damages which determination set into play the competing claims of comparative fault between Plaintiff, McCanless and the Metropolitan Government. The trial court found the intersection was dangerous, of which fact the Metropolitan Government had notice. Based upon that finding, the trial court proceeded to strike the Metropolitan Government's defense of immunity under Tenn. Code Ann § 29-20-203, and apportioned 55% of the fault to McCanless, 35% to the Metropolitan Government, and 10% to Plaintiff.

The Metropolitan Government appeals, contending the trial court erred by (1) admitting evidence of wrecks subsequent to the one at issue, (2) denying its immunity defense, (3) finding the intersection dangerous and that the Metropolitan Government had knowledge of the danger, and (4) finding the intersection was a contributing factor to the accident.

### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo,* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

### ANALYSIS

Governmental entities are immune from suit for any injury "which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary" pursuant to the Government Tort Liability Act (GTLA). Tenn. Code Ann. § 29-20-201(a). This immunity can be removed when an employee acting within the scope of his employment commits a negligent act or omission that is the proximate cause of an injury except when the injury arises out of "the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused, . . ." Tenn. Code Ann.§ 29-20-205(1). A governmental entity's immunity may

-3-

also be removed for any injury caused by "a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity" provided it has "constructive and/or actual notice" of such condition. Tenn. Code Ann. § 29-20-203(1), (2). We will first examine the discretionary function defense.

The Tennessee Supreme Court has determined the applicable analysis for determining whether a certain activity falls within a municipality's discretionary function under Tennessee Code Annotated § 29-20-205(1). *See Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992). In *Bowers*, the Supreme Court adopted the planning-operational test, explaining that "[u]nder the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Bowers*, 826 S.W.2d at 430 (citing *Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979)).

The responsibility for laying out the roadways for Nashville and Davidson County and for determining the appropriate means of controlling traffic lies with the Metropolitan Government. The Metropolitan Government conducted a study of the intersection in 1998. As part of the study, it considered the sight distance at the intersection, as well as the amount of traffic, and determined that it was not feasible to install a traffic control device. This decision, whether a traffic control device was warranted, involved the weighing of various factors and considerations of public policy. Thus, the decision not to install a traffic control device was a discretionary decision for which governmental immunity should be preserved under Tenn. Code Ann. § 29-20-205.[1]

The discretionary function exception addressed in *Bowers* covers "acts involving an element of judgment or choice if they are based on considerations of public policy." *Helton v. Knox County, Tennessee*, 922 S.W.2d 877, 886 (Tenn. 1996) (citing *Berkovitz v. United States*, 486 U.S.531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). The trial court correctly acknowledged the decision whether to install a traffic control device at the intersection of Hutton Drive and Polk Avenue was a discretionary function.

This decision, however, does not end our inquiry of the issues presented. We must also determine whether Plaintiff's injuries were caused, at least in part, by a defective, unsafe, or dangerous condition of any street or highway, owned and controlled by the Metropolitan Government. Its immunity may also be removed for an injury caused by "a defective, unsafe, or dangerous condition of any street . . . or highway" it owns or controls. The definition for "street" or "highway" includes traffic control devices thereon. Tenn. Code Ann. § 29-20-203(1). In order for immunity to be removed under this provision, however, "constructive and/or actual notice to the governmental entity of such condition [must] be alleged and proved." Tenn. Code Ann. § 29-20-203(2).

---

[1]Because we have found that the decision not to install the traffic device was immune from suit as a discretionary function, we need not reach the issue of whether the failure to install the device was the proximate cause of the accident. The inquiry of proximate cause is only applicable to an analysis under Tenn. Code Ann. § 29-20-205.

The analysis regarding the immunity defense under Tenn. Code Ann. § 29-20-203 requires a separate and distinct inquiry from that for the discretionary function immunity afforded under Tenn. Code Ann.§ 29-20-205. *Helton,* 922 S.W.2d at 880. *Helton* involved a vehicular accident where Plaintiff's husband crashed on a bridge lined with a stone wall in lieu of guardrails. The man died when the wall gave way and his car fell over the side of the bridge. The Court identified the two issues before it as

> 1. Whether the failure to install guardrails . . . rendered the bridge "defective, unsafe, or dangerous" and, if so, whether Knox County had actual or constructive notice of such condition for purposes of removing Knox County's immunity under § 29-20-203 of the GTLA; and
> 2. Whether under the "negligent act or omission" provision of § 29-20-205 of the GTLA the decision not to install guardrails . . . was a "discretionary function" such as would preserve Knox County's governmental immunity.

*Helton*, 922 S.W.2d at 880.

The Court noted that "even when the decision whether to install guardrails is a discretionary function that preserves governmental immunity under § 29-20-205(1), it is possible that the lack of guardrails might render the bridge or roadway so defective, unsafe, or dangerous that immunity is waived under § 29-20-203." *Helton*, 922 S.W.2d at 882 (n. 10). The Court went on to state, "it is conceivable that either provision might apply to remove governmental immunity." *Id.* at 885. Therefore, even though we have sustained the Metropolitan Government's discretionary function defense, we must consider whether the intersection was dangerous or defective, and if so, whether the Metropolitan Government had notice.

"Whether a particular site is defective, unsafe, or dangerous for purposes of waiving governmental immunity under § 29-20-203 is a question of fact." *Helton*, 922 S.W.2d at 882. The evidence prior to the September 15, 2000, accident[2] shows numerous reports of sight problems at the intersection. In fact, the intersection has been the subject of complaints since 1994. Additionally, a report was introduced into evidence that showed seven accidents had occurred at the intersection prior to the accident at issue. The trial court concluded the intersection of Hutton Drive and Polk Avenue was a dangerous intersection and that the Metropolitan Government had actual and constructive notice of the condition. The evidence does not preponderate the trial court's finding.

---

[2]Defendant asserts the trial court erred in considering reports and information about the intersection that came in after the date of the accident. We agree that the trial court should have only considered evidence of the intersection as of the date of the accident and prior to that date. Because we have the entire record before us, there is no need to remand due to this issue. We may evaluate the issues based only on the evidence that was available on and prior to September 15, 2000.

The trial court having found the intersection was dangerous and that the Metropolitan Government had notice of the condition was therefore correct to remove immunity pursuant to Tenn. Code Ann. § 29-20-203.

As an additional issue, the Metropolitan Government contends the trial court erred by admitting evidence of wrecks that occurred subsequent to the accident at issue. We have determined it was error to admit such evidence; however, the record contains evidence of events occurring prior to the accident at issue that is more than sufficient to support the trial court's findings. Therefore, we find the admission of such evidence harmless.

The Metropolitan Government also challenges the trial court's allocation of comparative fault. "A trial court has considerable latitude in allocating fault between or among culpable parties, and the appellate court reviews the same with a presumption of correctness." *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 585 (Tenn. Ct. App. 2002) (citing *Coln v. City of Savannah*, 966 S.W.2d 34, 44 (Tenn. 1998)). The evidence shows that McCanless pulled out in front of Plaintiff, but it also shows, as we have previously discussed, that the intersection was dangerous and defective and that the Metropolitan Government had notice of the condition. The evidence showed, *inter alia*, that the Hutton Drive stop sign was thirty-three feet from the intersection with Polk, there was no traffic advisory on Hutton about limited sight distance, and the Metropolitan Government had received numerous complaints about this problem. Considering the evidence before us, we find it does not preponderate against the trial court's allocation of fault, and we affirm the trial court's decision on this issue.

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Metropolitan Government.

_____
FRANK G. CLEMENT, JR., JUDGE