IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2009 Session

## CASEY BARCLAY, as Next of Kin of ODIS DOYLE BARCLAY, JR., deceased, and on Behalf of the Wrongful Death Beneficiaries of ODIS DOYLE BARCLAY, JR. v. KINDRED HEALTHCARE OPERATING, INC., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001730-07    John R. McCarroll, Jr., Judge**

─────────────

**No. W2008-02828-COA-R3-CV - Filed August 26, 2009**

─────────────

The trial court concluded that decedent's nephew had express oral authority to bind decedent to an optional arbitration agreement with a nursing home. It further determined that the arbitration agreement was not unconscionable. Plaintiff, decedent's son, appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Cameron C. Jehl, Deborah Truby Riordan, Carey L. Acerra and Brain D. Reddick, Little Rock, Arkansas, for the Appellant, Casey Barclay.

F. Laurens Brock, David J. Ward and Alix C. Michel, Chattanooga, Tennessee, for the Appellees, Kindred Healthcare Operating, Inc., Kindred Healthcare, Inc., Kindred Nursing Centers East, LLC, Kindred Hospitals Limited Partnership d/b/a Cordova Rehabilitation and Nursing Center, James W. Freeman, Renee Tudor, Harland Bicking and John E. Palmer.

**OPINION**

This appeal arises from an action for wrongful death filed in March 2007 in the Circuit Court for Shelby County by the son of decedent Odis Barclay acting on behalf of decedent's beneficiaries (Plaintiff) against Kindred Healthcare Operating, Inc, d/b/a Cordova Rehabilitation and Nursing Center, et al. (collectively, "Cordova Rehabilitation"). In May 2007, Cordova Rehabilitation filed a motion to compel arbitration and stay litigation, asserting Plaintiff's claim was subject to arbitration under an Alternative Dispute Resolution Agreement ("the arbitration agreement") executed by Ernest A. Napier (Mr. Napier), acting as Odis Barclay's (Mr. Barclay's) legal representative, when Mr. Barclay was admitted to Cordova Rehabilitation. In his response to

Cordova Rehabilitation's motion, Plaintiff denied that a valid arbitration agreement existed and that Mr. Napier was Mr. Barclay's legal representative. Plaintiff asserted that Mr. Napier, who is Mr. Barclay's nephew, had neither express nor apparent authority to bind Mr. Barclay to the arbitration agreement, and that Mr. Barclay had never executed a durable power of attorney for healthcare "or otherwise."

Following discovery and a May 2008 hearing, the trial court found that, although Mr. Napier had executed the arbitration agreement, Mr. Barclay had signed the remaining Cordova Rehabilitation admission documents himself. The trial court also found that Mr. Napier had been authorized to handle Mr. Barclay's financial affairs for several years; that Mr. Napier was authorized to receive Mr. Barclay's social security check; and that Mr. Napier had been authorized to make medical and health decisions on behalf of Mr. Barclay for many years. The trial court concluded that Mr. Napier had the express oral authority to sign the arbitration agreement on Mr. Barclay's behalf, and that the agreement was enforceable and not unconscionable.

Plaintiff moved for reconsideration or, in the alternative, permission for an interlocutory appeal pursuant to rule 9 of the Tennessee Rules of Appellate Procedure. Following a hearing in November 2008, the trial court denied Plaintiff's motion to reconsider and entered final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. The trial court also entered an order dismissing the matter and taxing costs to Plaintiff. Plaintiff filed a timely notice of appeal to this Court.

### Issues Presented

Plaintiff raises the following issues for our review:

(1)     Whether non-specific statements by an uncle to a nephew to "take care of" him can form the basis for express, oral authority to later bind the competent uncle to an optional arbitration agreement at the time of his nursing home admission when such conversations did not contemplate his future nursing home placement.

(2)     Whether the trial court erred in finding that the ADR Agreement was not unconscionable.

### Standard of Review

We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App.2006). If the trial court's factual determinations are based on its assessment of witness

credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's determinations on questions of law and its application of law to the facts *de novo*, however, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## *Discussion*

### *I. Procedural Posture*

We turn first to the procedural posture from which this appeal arises. The trial court entered two "final judgments" in this matter: it made its order dismissing Plaintiff's motion to reconsider final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and it also entered an order dismissing the cause in its entirety. As we previously have noted, Tennessee Code Annotated § 29-5-319(a)(2000) provides that an appeal may be taken from "[a]n order denying an application to compel arbitration made under § 29-5-303" or "[a] judgment or decree entered pursuant to the provisions of this part."[1] The code also provides, however, that upon granting a party's motion to compel arbitration, the trial court "shall" stay the action or proceeding involving the issue subject to arbitration. Tenn. Code Ann. § 29-5-303(d)(2000). The stay may be with respect only to the issue subject to arbitration where other issues are severable. *Id.* This Court has held that, upon granting a motion to compel arbitration of an issue, the correct procedure in the trial court is to stay the matter pending arbitration and not to dismiss it. *Mitchell v. Kindred Healthcare Operating, Inc.*, No. W2008-01643-COA-R3-CV, 2009 WL 16846467, at *3 (Tenn. Ct. App. June 17, 2009); *Thompson v. Terminix Int'l Co.*, No. M2005-02708-COA-R3-CV, 2006 WL 2380598, at *3 (Tenn. Ct. App. Aug. 16, 2006); *M.R. Dillard Constr. v. J.P. Realty, II, Inc.*, No. M1999-01250-COA-R3-CV, 2000 WL 48497, at *1 (Tenn. Ct .App. Jan. 21, 2000). Dismissal of the matter, making the trial court's judgment appealable as a final judgment under Rule 3 of the Tennessee Rules of Appellate Procedure, "amounts to an end run around the statute." *Thompson*, 2006 WL 2380598, at *3.

---

[1] Tennessee Code Annotated § 29-5-319 provides:

**Appeal.** – (a) An appeal may be taken from:
      (1) An order denying an application to compel arbitration made under § 29-5-303;
      (2) An order granting an application to stay arbitration made under § 29-5-303(b);
      (3) An order confirming or denying confirmation of an award;
      (4) An order modifying or correcting an award;
      (5) An order vacating an award without directing a re-hearing; and
      (6) A judgment or decree entered pursuant to the provisions of this part.
      (b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action."

Tenn. Code Ann. § 29-5-319 (2000).

On the other hand, when a party's motion to stay the matter for arbitration is opposed, the court must first determine whether the issue is subject to arbitration. Tenn. Code Ann. § 29-5-303(a)(2000); *Thompson*, 2006 WL 2380598, at \*4. The trial court must adjudicate certain "gateway" issues, including matters "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Thompson*, 2006 WL 2380598, at \*4 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). The issues that are within the trial court's gate-keeping duties are limited to the "'validity of the arbitration clause ... [and] its applicability to the underlying dispute between the parties.'" *Thompson*, 2006 WL 2380598, at \*4 (quoting *Green Tree Fin. Corp.*, 539 U.S. at 452). These gateway issues are constrained to "'certain limited circumstances, [where] courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and un mistakable[e]' [sic] evidence to the contrary).'" *Thompson*, 2006 WL 2380598, at \*4 (quoting *Green Tree Fin. Corp.*, 539 U.S. at 452 (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986))). These limited circumstances generally involve matters "'contracting parties would likely have expected a court' to decide." *Thompson*, 2006 WL 2380598, at \*4 (quoting *Green Tree Fin. Corp.*, 539 U.S. at 452 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002))). As a general rule, any doubt about the "scope of arbitrable issues" should be resolved "'in favor of arbitration.'" *Thompson*, 2006 WL 2380598, at \*4 (quoting *Green Tree Fin. Corp.*, 539 U.S. at 452 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985))).

In cases wherein an arbitration agreement is to be construed in accordance with the Tennessee Uniform Arbitration Act as codified at Tennessee Code Annotated § 25-3-301, *et. seq.*, as the agreement in this matter is, contract formation issues are issues to be decided by the courts, not by arbitration. *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 883 (Tenn. 2007). Therefore, where an action challenges the validity of an arbitration agreement on the grounds of unconscionability or fraud, the court must determine the validity of the agreement before submitting the dispute to arbitration. *Taylor v. Butler*, 142 S.W.3d 277, 283 (Tenn. 2004). Likewise, the question of the existence of a purported agent's authority to enter an arbitration agreement is an issue bearing on the validity of the agreement and is to be determined by the court. *Owens*, 263 S.W.3d at 883.

Where the issue(s) adjudicated in the trial court is (are) a gateway issue(s) concerning the validity or formation of the arbitration agreement, and where the trial court determines the dispute is subject to arbitration, we believe the correct procedure to be followed by the trial court is to stay the matter and permit an interlocutory appeal of its judgment on the gateway issue(s), or to make its judgment on that (those) issue(s) final pursuant to Tennessee Rules of Civil Procedure 54.02. We note that, under the Federal Arbitration Act, "where . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Green Tree Fin. Corp. - Alabama v. Randolph*, 531 U.S. 79, 89 (2000). The *Green Tree* Court noted, however, that if the District Court had entered a stay and not an order dismissing that case, the order would not be appealable. *Id.* at 87, n.2 (citing 9 U.S.C. § 16(b)(1)). The Court further noted that the question of whether the District Court should

-4-

have stayed the matter rather than dismissing it was not before the Court, and declined to address it. *Id.* We invite the Tennessee Supreme Court and the General Assembly to address the procedural mechanism that best reconciles Tennessee's statutory provisions, the court's role as adjudicator of initial gateway issues, and the Tennessee Rules of Appellate Procedure.

In this case, the trial court made its judgment denying Plaintiff's motion to reconsider final pursuant to Rule 54.02. It also adjudicated Plaintiff's motion for interlocutory appeal by dismissing the action. Thus, we turn to whether the arbitration agreement in this case is valid and enforceable where it was executed by Mr. Napier on behalf of Mr. Barclay.

## II. Oral Authority

Plaintiff asserts that the trial court erred by determining that Mr. Napier had express oral authority to execute the arbitration agreement with Cordova Rehabilitation on Mr. Barclay's behalf. The facts relevant to our disposition of this issue are largely undisputed. Mr. Napier is Mr. Barclay's nephew and lived with Mr. Barclay from 1969 until 1974 after being taken from his mother's care in Mississippi. Mr. Napier resided with Mr. Barclay from age 12 to age 17. Although Mr. Napier did not reside with Mr. Barclay at any time after 1974, they remained in contact.

Mr. Barclay did not execute a power of attorney appointing Mr. Napier as his attorney in fact. However, Mr. Napier had the authority to receive Mr. Barclay's social security check and paid Mr. Barclay's bills from a joint checking account for approximately 13 years.

When Mr. Barclay was admitted to the Cordova Rehabilitation and Nursing Center in February 2005, he was competent and executed the Admissions Agreement and attachment A, Consent to Admission and Treatment, himself. Attachment M, the optional arbitration agreement, was not presented to Mr. Barclay with the remainder of the Admissions Agreement. Rather, the arbitration agreement was signed by Mr. Napier out of Mr. Barclay's presence and without his knowledge. Mr. Napier did not inform Mr. Barclay that he had executed the arbitration agreement on his behalf. When he signed the arbitration agreement, Mr. Napier was aware that it was optional and could be revoked within 30 days. When asked whether he read the arbitration agreement, Mr. Napier testified "[p]robably not." Mr. Napier further testified that he and Mr. Barclay had not discussed Mr. Barclay's admission to a nursing home in conjunction with Mr. Napier's responsibility for signing "hospital documents or bills." He further testified that Mr. Barclay, "probably realized that responsibility."

It is undisputed that Mr. Napier generally "took care of" Mr. Barclay, and that Mr. Barclay asked Mr. Napier to "take care of" his "stuff" and "bills" and told Mr. Napier, "if anything happens just take care of it." This Court does not doubt Mr. Napier's testimony that Mr. Barclay said, "son, I'm just thankful you're here" in response to Mr. Napier's discussions with him at Cordova Rehabilitation. The issue in this case, however, is whether Mr. Barclay expressly gave Mr. Napier the oral authority to act as his attorney in fact as a matter of law.

It is clear that Mr. Barclay depended on Mr. Napier to make financial decisions and generally to "take care" of him. It is also clear to us that the trial court found Mr. Napier's testimony regarding what he believed were Mr. Barclay's intentions to be credible. However, as we observed in *Mitchell v. Kindred Healthcare Operating*, Mr. Napier's belief is not sufficient to establish authority as a matter of law. *See Mitchell v. Kindred Healthcare Operating, Inc.*, No. W2008-01643-COA-R3-CV, 2009 WL 1684647, at *6 (Tenn. Ct. App. June 17, 2009). As we previously have stated,

> Nursing Home is not entitled . . . to simply "rely upon someone who comes in and says, 'I'm the POA. I have the authority. Here's the Power of Attorney. Let me sign the documents.' By signing the arbitration agreement, [asserted agent] sought to bind [decedent] to a course of action that altered her legal rights."

*Mitchell*, 2009 WL 1684647, at *6 (quoting *Hendrix v. Life Care Centers of America, Inc.*, No. E2006-02288-COA-R3-CV, 2007 WL 4523876, at *5-6 (Tenn. Ct. App. Dec. 21, 2007)).

As Plaintiff asserts, Mr. Barclay had ample opportunity to execute a power of attorney designating Mr. Napier as his agent. Mr. Napier, moreover, stated in his deposition that he and Mr. Barclay discussed the possibility on several occasions, but that Mr. Barclay said:

> You know what? You're on my checking account. You handle – you talk to the doctors, and Jennifer [Mr. Napier's sister, who also was a ward of Mr. Barclay) – y'all take care of everything. It doesn't matter.

Additionally, the Admission Agreement signed by Mr. Barclay provided that, if a patient had designated a legal representative for healthcare or for finances, "[a] document that evidences this legal authority must be provided to the Center." As noted above, Mr. Barclay signed the Admissions Agreement himself; Mr. Napier did not sign as a legal representative or responsible party. There is no evidence in the record to suggest that Mr. Barclay indicated that Mr. Napier was his legal representative when he executed the Admissions Agreement, and there is no evidence in the record that Mr. Barclay assented to or was even aware of an optional arbitration agreement that could be revoked by him within 30 days.

Although we review the trial court's findings of fact with a presumption of correctness, we review the trial court's holding regarding the enforceability of an arbitration agreement *de novo*. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004). An agency relationship must be proved by the party who asserts it. *John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 608 (Tenn. App. 1986). It may not be proved only by the statements of the agent. *Id.* In this case, as the proponent of the arbitration agreement, Cordova Rehabilitation carries the burden of establishing that Mr. Napier had the authority to sign the agreement on Mr. Barclay's behalf. In light of the totality of the circumstances, Cordova Rehabilitation has failed to carry its burden of proof to establish that Mr. Barclay intended to make Mr. Napier his attorney in fact or legal representative.

### *Holding*

In light of the foregoing, the judgment of the trial court dismissing the matter for arbitration is reversed. In light of our holding on the issue of authority, we decline to address the issue of unconscionability as unnecessary to our disposition of this matter. This matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellee, Kindred Healthcare Operating, Inc.

_____
DAVID R. FARMER, JUDGE