IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2010 Session

## TERRIE LYNN HALL HANKINS v. JAMES MICHAEL HANKINS

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007025-03       John R. McCarroll, Judge**

---

**No. W2009-00240-COA-R3-CV - Filed March 26, 2010**

---

This appeal arises from a divorce action. Husband appeals the trial court's classification and division of property, the award of alimony *in futuro* to Wife, and the award to Wife of a portion of her attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. AND J. STEVEN STAFFORD, J., joined.

George L. Rice, IV and George L. Rice, III, Memphis, Tennessee, for the appellant, James Michael Hankins.

Stuart B. Breakstone, and Kathy Baker Tennison, Memphis, Tennessee, for the appellee, Terrie Lynn Hall Hankins.

### OPINION

Terrie Lynne Hall Hankins (Ms. Hankins) and James Michael Hankins (Mr. Hankins) were married in March 1996. Their marriage was Mr. Hankins' second marriage and Ms. Hankins' fourth. At the time of the marriage, Ms. Hankins was approximately 40 years of age and Mr. Hankins was approximately 50 years of age. Mr. Hankins and Ms. Hankins lived together for three years prior to the marriage.

This protracted and acrimonious lawsuit commenced in December 2003, when Ms. Hankins filed a complaint for divorce in the Circuit Court for Shelby County. In her complaint, Ms. Hankins alleged Mr. Hankins was guilty of inappropriate marital conduct and that irreconcilable differences had arisen between them. She prayed for an equitable division

of property, alimony, attorney's fees, and costs. On December 29, 2003, Ms. Hankins petitioned the court for a mandatory injunction ordering Mr. Hankins' daughter, who then was 20 years of age, to leave the marital residence, alleging that a physical altercation had occurred and that she had suffered numerous bruises.

Mr. Hankins filed an answer and counter-complaint on December 31, 2003. Mr. Hankins admitted that irreconcilable differences had arisen and denied the remaining allegations asserted by Ms. Hankins in her complaint. He counter-complained for divorce, alleging that Ms. Hankins was guilty of cruel and inhumane treatment of himself and his daughter that rendered cohabitation unsafe and improper. Ms. Hankins answered on January 5, 2004, admitting irreconcilable differences and denying the remainder of Mr. Hankins' allegations. On January 20, 2004, Mr. Hankins responded to Ms. Hankins' petition for injunctive relief, denying Ms. Hankins' allegations.

Also on January 20, Mr. Hankins' daughter Heather filed a motion to intervene and a response to Ms. Hankins' motion for injunctive relief. She denied Ms. Hankins' allegations and filed a petition for an order of protection against Ms. Hankins. She prayed for an *ex parte* temporary order, a hearing, and an extended order of protection for one year. On January 30, the parties entered a consent order of protection enjoining Ms. Hankins from coming about Mr. Hankins or his daughter, enjoining Mr. Hankins and his daughter from coming about Ms. Hankins, and enjoining all parties from abusing or threatening to abuse each other. In March 2004, the trial court also entered a consent order on temporary support whereby Mr. Hankins agreed to pay Ms. Hankins support in the amount of $4,000 per month and to maintain her health, life, and automobile insurance.

In January 2005, Mr. Hankins filed a motion to dismiss Ms. Hankins' complaint for failure to state a claim. In his motion, Mr. Hankins alleged that Ms. Hankins had not obtained a divorce from her second husband, Roger Glenn Baker (Mr. Baker), who died in 1997. He alleged that Ms. Hankins had concealed her marriage to Mr. Baker, and that she had fraudulently entered into the Hankins marriage in 1996. He prayed for Ms. Hankins' complaint to be dismissed; for a declaration that the Hankins marriage was void; and for dismissal of all orders of *pendente lite* support. In the alternative, Mr. Hankins prayed for further discovery to be suspended pending Ms. Hankins' answer to his request for admissions and the production of documents. He also prayed for attorney's fees and costs.

After taking Ms. Hankins' deposition, Mr. Hankins filed a motion to bifurcate the proceedings, stay discovery and suspend temporary support. Mr. Hankins asserted that, in her complaint for divorce from Mr. Baker, which was filed in the Circuit Court for Shelby County, Ms. Hankins had fraudulently alleged that she did not know the whereabouts of Mr. Baker. He asserted that publication was made only in Memphis newspapers although Mr.

Baker had never resided in Tennessee, and that the divorce decree entered by the circuit court in 1985 was void. Mr. Hankins subsequently filed a motion to amend, asserting that "[a]s a result of [Ms. Hankins'] knowing, fraudulent statements, proper service was never able to be perfected upon Roger Baker, thus depriving the Court of the jurisdiction to grant a valid and legal divorce in the Baker case." The trial court granted Mr. Hankins' motions to amend and to bifurcate the proceedings, but denied Mr. Hankins' subsequent motion for summary judgment. The trial court granted Mr. Hankins' motion for permission to seek an interlocutory appeal, which this Court denied in August 2005.

The trial court held hearings on the validity of the parties' marriage in November 2005. The court determined that Ms. Hankins had not made a diligent search to determine the whereabouts of Mr. Baker in 1985, and concluded that her divorce from Mr. Baker was invalid. Following hearings on the issue of property division, the trial court entered final judgment on the matter in February 2007, dismissing all remaining matters. Ms. Hankins filed a notice of appeal to this Court. On appeal, we held:

> Viewing the record from the Baker divorce proceedings, we find that the trial court's allowance of a collateral attack by Mr. Hankins on the issue of jurisdiction was in contravention of the law as set forth in [*Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1963)], as his basis for such attack was, in fact, parol proof and not a facially void decree.

> Additionally the trial court presiding over the Baker divorce clearly had subject matter jurisdiction over those proceedings.

*Hankins v. Hankins*, No. W2006-00232-COA-R3-CV, 2007 WL 2351171, at *7 (Tenn. Ct. App. Aug. 20, 2007)("Hankins I"). We concluded that the Hankins marriage was valid and not void from its inception, and accordingly reversed the trial court's order of property division between Mr. Hankins and Ms. Hankins. We remanded the matter to the trial court for further proceedings. *Id.*

Following further discovery, the trial court held hearings beginning October 20, 2008, and concluding November 10, 2008. The trial court entered final judgment on the matter on January 26, 2009. The trial court stated that the parties had agreed to a divorce in accordance with Tennessee Code Annotated § 36-4-129, but could not agree on the issue of property division, alimony, or attorney's fees. The trial court classified and divided the parties' property and awarded Ms. Hankins 48% of the marital estate and Mr. Hankins 52% of the marital estate. The trial court determined Mr. Hankins had separate property valued at $1,851,817, and that Ms. Hankins had separate property valued at $5,500. The trial court awarded Ms. Hankins alimony *in futuro* in the amount of $1,500 per month and reinstated

its prior ruling regarding alimony *pendente lite*, awarding Ms. Hankins a judgment in the amount of $124,000. The trial court awarded Ms. Hankins alimony *in solido* in the amount of $100,000 to pay for her attorney's fees.

Mr. Hankins filed a timely notice of appeal to this Court on February 6, 2009. Mr. Hankins also filed a motion to stay the judgment, which the trial court granted in part and denied in part. The trial court also granted in part and denied in part Ms. Hankins' motion for costs. We affirm the judgment.

## *Issues Presented*

Mr. Hankins presents the following issues for our review:

(1)     Was an irregularity apparent in the record in the Baker divorce that would subject it to collateral attack in the Hankins divorce?

(2)     Did the trial court err in its classification, valuation, and distribution of the parties' property?

(3)     Did the trial court err in granting [Ms.] Hankins alimony in futuro?

(4)     Did the trial court err in awarding [Ms.] Hankins attorney's fees?

Ms. Hankins cross-appeals and presents similar issues with respect to alimony and the division of property, asserting the trial court erred by failing to award her additional alimony, attorney's fees, and property.

## *Standard of Review*

We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App. 2006). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's determinations on questions of law, and its application of law to the facts, *de novo*, however, with no

presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

### *Discussion*

We first address Mr. Hankins' renewed contention that Ms. Hankins' divorce from Mr. Baker was not valid. Mr. Hankins asserts that, in our opinion in *Hankins I,* we erred by holding that nothing on the face of the record in the Baker divorce indicated that the decree was subject to collateral attack. We agree with Ms. Hankins that Mr. Hankins seeks to relitigate this issue, and that the issue is barred by *res judicata*. In *Hankins I*, we stated, "[b]ecause the Baker divorce decree was not subject to collateral attack in this case, the parties' marriage was valid." *Hankins*, 2007 WL 2351171, at *11. We pretermitted the remaining issues and remanded to the trial court for further proceedings "consistent with [the] opinion." *Id.* The validity of the Baker divorce was not a matter before the trial court on remand, and it may not be relitigated here. This issue is without merit. We accordingly turn to the issues raised by the parties regarding the classification, valuation and distribution of property, alimony, and attorney's fees.

After classifying and valuing the parties' assets, the trial court must divide the marital estate equitably. Tenn. Code Ann. § 36-4-121(a)(1); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). The factors to be considered by the trial court when dividing the marital estate are set forth in § 36-4-121(c) of the Tennessee Code.[1] An equitable division

---

[1]This section provides:

        (c) In making equitable division of marital property, the court shall consider all relevant factors including:
        (1) The duration of the marriage;
        (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
        (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
        (4) The relative ability of each party for future acquisitions of capital assets and income;
        (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
        (6) The value of the separate property of each party;

(continued...)

of marital property does not require a precisely equal division of marital assets, but requires a fair final result. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Batson*, 769 S.W.2d at 859. Additionally, the trial court may adjust the division of marital property to assist the economically disadvantaged spouse when there is a disparity between the parties' relative earning capacities. *Robertson*, 76 S.W.3d at 341. Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are afforded great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Accordingly, we will not interfere with the trial court's decision unless it is contrary to the preponderance of the evidence or is based on an error of law. *Id.*

In his brief, Mr. Hankins asserts that the trial court erred by classifying his income and profits from his three businesses as marital property because they were "income derived from separate property." He asserts that, because he acquired all or part of three businesses prior to the marriage, any income received during the marriage from those businesses in excess of his base salary of $30,000 per year should have been classified as his separate property. He further asserts that the trial court erred in finding that shares of one business bought subsequent to the marriage were marital property and that the court also erred in holding that end-of-the-year profits were also marital property. In short, Mr. Hankins asserts that all income received, other than his base salary, was separate income notwithstanding that he treated the income as compensation on his income tax forms and in his business records.[2]

Ms. Hankins, on the other hand, asserts that Mr. Hankins' earnings during the course of the marriage were all deposited into a checking account from which the marital expenses were paid. She contends that amounts claimed by Mr. Hankins as separate returns on investment were "inextricably commingled" with marital assets. Ms. Hankins additionally contends that the trial court erred by classifying a condominium in Destin as Mr. Hankins'

---

[1](...continued)
        (7) The estate of each party at the time of the marriage;
        (8) The economic circumstances of each party at the time the division of property is to become effective;
        (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
        (10) The amount of social security benefits available to each spouse; and
        (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c)(2005).

[2]Mr. Hankins initially asserted that amounts invested in IRA's during the course of the marriage also should be considered his separate property, but abandoned this argument in light of *Snodgrass v. Snodgrass*, 295 S.W.3d 240 (Tenn. 2009).

separate property and awarding it to Mr. Hankins.

The classification of a particular item of property as either separate or marital is a question of fact which must be determined in light of all the circumstances. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009)(citations omitted). In this case, the trial court found that a portion of the proceeds from Mr. Hankins' sale of his businesses was his separate property and that a portion was marital property. It also found that the income earned by Mr. Hankins from his business and from his employment with the Wakefield Corporation during the marriage was marital income. The trial court stated:

> Prior to and during the marriage, Husband ran three successful businesses . . . Husband wisely anticipated a decline in the construction business and sold his companies at a fair market value. A portion of the proceeds from the sale of the businesses are Husband's separate property and a portion . . . are marital property. . . .
>
> . . . .
>
> . . . . Husband treated his compensation from his corporations as income on his income tax forms and in his business records. Husband's compensation from his corporations during the marriage is marital income and not a "return on investment." Husband used marital income to purchase a portion of his corporations.
>
> Husband's income was used to support the parties' high standard of living during the marriage. They frequented their houseboat at Pickwick and enjoyed other vacations and travel, including vacationing at the Destin condo that was previously owned by [one of Mr. Hankins' companies] and transferred to the Husband in June 2006 at a value of $800,000. . . . Although Husband did maintain several separate accounts, the substantial portion of his income during the marriage was used to support the high standard of living enjoyed by the parties.

The trial court's order includes a six-page, detailed listing of disputed and undisputed property values and classifications, including amounts listed as "allocations from marital property post-separation dissipation by Husband and extraordinary allocations"; debts; vehicles, real property; investments; life insurance; and miscellaneous personal property. The trial court found that assets valued at approximately $3,000,000 were marital property, and that assets valued at approximately $2,000,000 were Mr. Hankins' separate property.

In addition to his separate property, the trial court awarded Mr. Hankins marital property valued at $1,560,149.

Upon review of the substantial record in this case, we cannot say the evidence preponderates against the trial court's findings. We find no abuse of discretion in the trial court's division of property. We accordingly affirm the trial court's judgment on this issue.

We next turn to the trial court's award of alimony *in futuro* to Ms. Hankins in the amount of $1500 per month. It is undisputed that Ms. Hankins did not work outside the home during the course of the parties' marriage while the parties resided together. Following the parties' separation, Ms. Hankins worked as a cocktail waitress and earned approximately $12,000 to $16,000 per year. Ms. Hankins asserts that she "was forced to obtain work . . . while her claim for social security disability was pending" and that she "was found to be disabled for the purposes of receiving social security benefits yet she was denied said benefits . . ." Ms. Hankins contends that the trial court erred by not awarding her alimony in the amount of $4,500 per month. Mr. Hankins asserts that expert testimony in the record supports a finding that Ms. Hankins is capable of earning at least $30,000 per year. He also asserts that Ms. Hankins is willfully underemployed and under-reporting her income. Mr. Hankins also asserts that the trial court found that he was not willfully underemployed, and that his actual earning capacity is $61,525 per year, the amount he earns in his current position. He argues that the trial court's award of alimony *in futuro* to Ms. Hankins is inconsistent with the statutory preference for rehabilitative alimony and that the trial court's award therefore amounts to an abuse of discretion.

The trial court has wide latitude in making an award of alimony. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App.2007). An award of alimony depends on the circumstances of each case, and need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations. *E.g., Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of alimony to be awarded, the trial court must balance several statutory factors, including those enumerated in section 36-5-121 of the Tennessee Code. Although there is a preference for rehabilitative alimony, the type and amount of an alimony award remain largely within the discretion of the trial court. *Id*. at 470. This Court will not alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id*.

As noted above, in light of the preference for rehabilitative alimony, a trial court may choose to award an economically disadvantaged spouse a greater percentage of marital property in lieu of alimony. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)(citations omitted). The *Robertson* court noted, "[c]areful distribution of the marital property may assist the disadvantaged spouse in achieving rehabilitation in furtherance of the

legislative policy of eliminating spousal dependency." *Id.* Upon review of the record in this case, we observe that the trial court made well-considered findings based on the evidence and in light of the applicable statutory factors. The trial court found that Ms. Hankins contributed to the marriage as a homemaker and step-parent, and that she managed the household so that Mr. Hankins was able to focus on his career. The trial court also found that Ms. Hankins assisted Mr. Hankins with respect the business's social obligations and by working at numerous conventions and business-related functions. The trial court determined that Ms. Hankins was not credible with respect to her physical ability to work, although she was economically disadvantaged with respect to her earning capacity. The trial court determined that, in light of the property division and the parties' respective earning capacities, and in light of the statutory factors, Ms. Hankins was entitled to alimony in futuro the amount of $1500 per month. As noted above, Mr. Hankins was awarded 52% of the marital estate and retained separate property of approximately $2,000,000. Additionally, at the time of the trial of this matter, he was earning in excess of $60,000 per year while Ms. Hankins' income was less than $16,000 per year. We find no abuse of discretion and accordingly affirm the trial court's judgment on this issue.

We next turn to the trial court's award of attorney's fees to Ms. Hankins in the amount of $100,000, which the trial court awarded as alimony *in solido*. The decision to award attorney's fees as an award of alimony *in solido* lies within the discretion of the trial court, and we will not reverse the award absent an abuse of discretion. *E.g., Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). Mr. Hankins asserts the trial court erred by awarding Ms. Hankins attorney's fees in the amount of $100,000 because Ms. Hankins had a flat fee contract with her attorney limiting fees to $25,000. Mr. Hankins asserts that, after he filed a Rule 60 motion attaching a copy of Ms. Hankins' contract with her attorney, in October 2008 Ms. Hankins executed a subsequent contract that is unenforceable for lack of consideration. Ms. Hankins asserts the trial court erred by not awarding her attorney's fees in the amount of approximately $400,000, and notes that Mr. Hankins' attorney's fees were in excess of $460,000. She also asserts that over $30,000 of the fees she requested are owed to her previous attorney.

It cannot be seriously debated that this case evolved into a case of far greater complexity than reasonably could have been anticipated when this litigation began more than six years ago. Further, the only reference in the record that Mr. Hankins points us to with respect to the alleged flat rate fee is an exhibit to his Rule 60 motion filed in October 2008. This issue appears to have been abandoned in the trial court. Further, as noted above, the trial court specifically awarded Ms. Hankins a judgment of alimony in solido in the amount of $100,000 in consideration of her attorney's fees. In light of the entirety of this case, including the division of property and amount of property retained by Mr. Hankins as separate property, and in consideration of the time devoted to Mr. Hankins' continual

attempts to relitigate the issue of the Baker divorce and the energy devoted to generating the voluminous record transmitted to this Court, we cannot say the trial court abused its discretion in awarding Ms. Hankins alimony *in solido* in the amount of $100,000. We affirm.

### *Conclusion*

In light of the forgoing, the judgment of the trial court is affirmed. Ms. Hankins' request for attorney's fees on appeal is denied. Costs of this appeal are taxed one-half to the Appellee/Cross-Appellant, Terrie Lynn Hall Hankins, and one-half to the Appellant, James Michael Hankins, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE